IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KAYOKA D. CHAMBERS,<br><br>                    Plaintiff,<br><br>        vs.<br><br>BIMBO    BAKERY,    and    BIMBO<br>BAKERIES USA, INC.,<br><br>                    Defendants. | **8:19CV200**<br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the court upon review of Plaintiff's Amended Complaint (filing 11) to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e).

## I. BACKGROUND

Plaintiff filed this action on May 6, 2019 and was given leave to proceed in forma pauperis. (Filing 1; Filing 5.) On April 8, 2020, the court conducted its initial review and determined that Plaintiff's pleading failed to satisfy the minimal pleading standard set forth in Federal Rule of Civil Procedure 8. (Filing 6.) However, the court gave Plaintiff until May 8, 2020, to file an amended complaint asserting plausible claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), and the Nebraska Fair Employment Practice Act, Neb. Rev. Stat. §§ 48-1101 to 48-1125 ("NFEPA").

On April 17, 2020, the court directed Plaintiff to update her address with the court because the copy of the Memorandum and Order on initial review was returned to the court as undeliverable. (Filing 8.) Plaintiff updated her address on May 4, 2020 (filing 9), and the court, on its own motion, extended the deadline for

Plaintiff to file an amended complaint to June 6, 2020. (Filing 10.) Plaintiff filed her Amended Complaint on May 21, 2020. (Filing 11.)

## II. SUMMARY OF AMENDED COMPLAINT

Plaintiff utilized the Pro Se 1 Form Complaint for a Civil Case for her Amended Complaint and attached a four-page handwritten letter to the undersigned; her Charge of Discrimination filed with the Nebraska Equal Opportunity Commission ("NEOC") and Equal Employment Opportunity Commission ("EEOC") claiming discrimination and retaliation based on race, color, and sex; and approximately one hundred pages of supplemental materials.[1] Liberally construed, Plaintiff seeks damages from her former employer, Defendants Bimbo Bakery and Bimbo Bakeries USA, Inc. (hereinafter "Defendants"), for discrimination and harassment based on Plaintiff's race, color, sex, and sexual orientation and for retaliation.

In her "Statement of Claim," Plaintiff alleges the following:

> I was fired for no reason. I was harrassed, i was belittled, i was told lesbians are not suppose to be leads. i was discriminate race, sex. I have documents I took my job serious and loved what i did as a lead. i lost everything i have for no reason. i need justice, for the highest dollar amount, that you have [75,000]. Words can't express how hurt and emotional i am. Bimbo belittled me in every shape, form, fashion.

(*Id*. at CM/ECF p. 4.)

---

[1] In assessing Plaintiff's Amended Complaint, the court will consider the allegations raised in Plaintiff's NEOC/EEOC charge of discrimination, as well as those raised in the Amended Complaint and supplemental materials. *See Coleman v. Correct Care Solutions*, 559 Fed. App'x. 601, 602 (8th Cir. 2014) (unpublished); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In the handwritten letter attached to her Amended Complaint, Plaintiff includes the following allegations:

> i went to hr 1st and let her know i was being harrast by richard williams. i thought and felt they were professional to get to the bottom of why i was being treated in such way when i have done nothing wrong but did my job.
> . . .
> i was attacked, harrased called out my name, all because i went to hr to let them know i was feeling belittled. I thought hr is suppose to help you but after talking to hr i felt like maybe they will call richard williams in the office and troy allen but no they just swept it under the rug now at this time im not only being attack by the supervisor richard im being attack by my peers. They would say here come the HR Snitch!?? Troy allen would say black lesbians not suppose to hold a 2nd shift lead position[.]

(*Id*. at CM/ECF pp. 6, 8.)

In her attached Charge of Discrimination filed with the NEOC and EEOC, Plaintiff alleged she is "Black and Female," had worked for Defendants from May 3, 2010 to June 22, 2018, "most recently as a Lead," and had filed a previous charge of discrimination on December 23, 2013. (*Id*. at CM/ECF p. 10.) Plaintiff claimed she had been discriminated and retaliated against based on "race, color, [and] sex, female, for not conforming to sex stereotypes about how women are expected to present themselves in my physical appearance, actions and/or behaviors" in violation of Title VII and the NFEPA. In support of her claims, Plaintiff alleged the following:

> 1. On March 22, 2018, I was sexually harassed when I learned that Floor Supervisor Richard Williams (Male, Black) had pulled employee Cassandra Penn (Female, Black) over to side, and told her that he had heard that she and I were out in the parking lot in my car yesterday, and her clothes were halfway off getting intimate. Mr. Williams was spreading this untrue rumor to other employees as well. I complained about this to Production Manager Troy Allen (Male,

White), but he took no action, so I then complained to Human Resources about the sexual harassment, and the fact that Mr. Williams was also harassing me by disrespecting me in huddles, something he never did to the Male Leads. Human Resources conducted an investigation, but Human Resources Representative Yasmine (Last Name Unknown-LNUK, Female, Non-Black) called me in and asked me to let things die down, otherwise Mr. Williams would be let go, and she alleged he was essential to the Respondent.

2. Following my complaint, the harassment continued, in that Mr. Williams told everyone I was a snitch on other matters as well, and other employees started calling me '1-800 HR snitch.' I was then subjected to different terms and conditions of employment when supervisor did not back me up when I attempted to enforce Respondent policies. For example, if I reported to a supervisor that an employee wasn't wearing the proper PPE, or their shirts were untucked, or they had their cell phones on the floor, in violation [of] policy, instead of handling the situation, the supervisor would tell the employee that they were bringing it up because I had told them to, and Mr. Williams would tell people I would call the hotline on them. This continued throughout my employment.

3. On June 14, 2018, Yasmine suspended me for allegedly harassing and threatening an employee, which I deny. I was not told who I allegedly harassed or threatened, but was told that someone reported that I had stated when I became a supervisor I would write them up and fire them, or have my son come down to beat them up, all of which I deny. While I was on suspension, Mr. Williams told other individuals that I was suspended because I had been in the locker room watching a Mexican employee undress, which was untrue.

4. On June 22, 2018, the Respondent terminated my employment, for allegedly harassing and threatening another employee, which I deny. I had never received any disciplinary actions prior to my suspension, and I was never spoken to during the course of the investigation. Other employees have made threats and not been terminated, including Nick Abdo (Male, Non-Black, Laborer) who told Supervisor Leo to go kill himself, before walking out on the job for three days, and he was allowed to return to work without being written up.

5. My performance to date was satisfactory.

(*Id*. at CM/ECF pp. 10–11.)

## III. APPLICABLE STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569–70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). "A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). A "liberal construction" means that if the essence of an allegation is "discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true,

5

state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

Liberally construed, Plaintiff here asserts claims for race and sex discrimination, harassment, and retaliation. A plaintiff need not plead facts sufficient to establish a prima facie case of employment discrimination in his or her complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–12 (2002) (holding a complaint in employment discrimination lawsuit need not contain "facts establishing a prima facie case," but must contain sufficient facts to state a claim to relief that is plausible on its face), *abrogated in part on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570; *see also Cook v. George's, Inc.*, 952 F.3d 935, 939-40 (8th Cir. 2020). However, the elements of a prima facie case are relevant to a plausibility determination. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013) (stating elements of a prima facie case are "part of the background against which a plausibility determination should be made" and "may be used as a prism to shed light upon the plausibility of the claim"); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) ("While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim.").

## IV. DISCUSSION

Plaintiff alleges discrimination, harassment, and retaliation claims on the bases of race, color, and sex under Title VII and the NFEPA. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The NFEPA is patterned after Title VII, and Nebraska courts have looked to federal decisions in analyzing claims brought under the Nebraska act. *Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121, 1124 n.3 (8th Cir. 2017) ("We analyze discrimination

6

claims under the NFEPA by applying the same analysis for discrimination claims under Title VII.").

## A. Discrimination

To state a prima facie claim of race or sex discrimination Plaintiff must allege facts showing that (1) she is a member of a protected class; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011) (race); *Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 878 (8th Cir. 2014) (sex discrimination). "The required prima facie showing is a flexible evidentiary standard, and a plaintiff can satisfy the fourth part of the prima facie case in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class, or biased comments by a decisionmaker." *Pye*, 641 F.3d at 1019 (cleaned up).

Here, Plaintiff alleged she is African-American and a woman, both protected classes for purposes of Title VII. *See, e.g.*, *Davis v. KARK-TV, Inc.*, 421 F.3d 699, 704 (8th Cir. 2005) (recognizing African–Americans as a protected class for Title VII purposes); *Tharp v. Iowa Dep't of Corr.*, 68 F.3d 223, 226 (8th Cir. 1995) (referring to the "protected class of women employees" in context of Title VII discussion). Plaintiff also alleged Defendants discriminated against her because of her sexual orientation, which is unlawful under Title VII. *Bostock v. Clayton Cty.*, 140 S. Ct. 1731 (2020) (holding discrimination on the basis of an employee's homosexuality or transgender status is discrimination on the basis of sex and violates Title VII). Plaintiff also alleged she met her employer's legitimate expectations. While Plaintiff alleged she was terminated "for allegedly harassing and threatening another employee," Plaintiff denied that she had done so and alleged facts suggesting her job performance was satisfactory for the eight years she was employed by Defendants. (Filing 11 at CM/ECF pp. 10–11, 26, 30, 45–46, 48.) Plaintiff also alleged she suffered an adverse employment action (i.e., termination).

7

With respect to the fourth element and given the liberal construction due pro se complaints, the court concludes that Plaintiff has plausibly alleged circumstances giving rise to an inference of discrimination based on race and sex. Plaintiff alleged that Defendants suspended and then terminated her for allegedly harassing and threatening another employee, but Plaintiff did not receive any disciplinary actions prior to her suspension and "was never spoken to during the course of [Defendants'] investigation." (Filing 11 at CM/ECF p. 11.) Plaintiff also alleged that a male, non-black employee made threats to a supervisor and walked off the job for three days but was allowed to return to work without being disciplined or terminated. (*Id.*) The court must also consider Plaintiff's allegations that in the three months leading up to her termination her supervisor "did not back [her] up when [she] attempted to enforce [Defendants'] policies," that the Floor Supervisor, Richard Williams ("Williams"), "disrespect[ed] [her] in huddles, something he never did to the Male Leads," and Production Manager Troy Allen ("Allen") "would say black lesbians not suppose to hold a 2nd shift lead position." (*Id.* at CM/ECF pp. 8, 10–11.) Liberally construing Plaintiff's allegations, the court finds Plaintiff has stated a race-based and sex-based employment discrimination claim upon which relief may be granted.[2] *See Wright v. First Student, Inc.*, 710 F.3d 782, 784 (8th Cir. 2013) (holding that, in light of the liberal construction afforded pro se complaints, employee stated an employment-discrimination claim where he alleged that employer gave a non-credible reason for firing him and the real reason was because he is African American, disabled, and over age 55).

**B. Hostile Working Environment**

Liberally construed, Plaintiff may be alleging a hostile working environment claim based on sex. Title VII prohibits discrimination based on sex that creates a hostile or abusive working environment. *Linville v. Sears, Roebuck & Co.*, 335

---

[2] The court cautions Plaintiff that this is only a preliminary determination based solely on the allegations in the Complaint. This is not a determination of the merits of Plaintiff's claims or potential defenses thereto.

F.3d 822, 823 (8th Cir. 2003). To state a claim for hostile work environment based on sex, a plaintiff must show that "(1) he belongs to a protected group; (2) he was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action." *Id*. at 823–24. "To determine whether the harassment affected a term, condition, or privilege of [Plaintiff's] employment, we must consider the totality of the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with [Plaintiff's] job performance." *Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d 911, 922 (8th Cir. 2018) (quoting *Sellers v. Deere & Co.*, 791 F.3d 938, 945 (8th Cir. 2015)) (internal quotation marks and alterations omitted).

Here, Plaintiff alleged that on March 22, 2018, Floor Supervisor, Richard Williams, spread an untrue rumor that Plaintiff and another female employee were "getting intimate" in Plaintiff's car in the parking lot the previous day and that Williams "disrespect[ed] [her] in huddles, something he never did to the Male Leads" and generally talked badly about Plaintiff to other employees and that this behavior continued throughout her employment. (Filing 11 at CM/ECF pp. 10–11.) Plaintiff's allegations are sufficient at this stage to suggest harassment based on sex.

Even though Plaintiff has alleged a link between the harassment she experienced and her sex, the Amended Complaint's allegations fail to suggest conduct that is severe enough to support a hostile work environment claim. Conduct affecting a term, condition, or privilege of employment "requires that '[t]he harassment . . . be severe or pervasive enough to create an objectively hostile or abusive work environment and the victim must subjectively believe her working conditions have been altered.'" *Moses*, 894 F.3d at 922 (quoting *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 801 (8th Cir. 2009)) (internal quotation marks omitted). "[M]erely rude or unpleasant conduct are insufficient to affect the

terms and conditions of employment." *Id*. at 922–23 (quoting *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 420 (8th Cir. 2010)) (internal quotation marks omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id*. at 923 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)) (internal quotation marks omitted). Williams may have acted inappropriately in spreading false rumors about Plaintiff and belittling her in front of other employees, but "Title VII was not designed to create a federal remedy for all offensive language and conduct in the workplace." *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 967 (8th Cir. 1999).

## C. Retaliation

Title VII also prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must present evidence that (1) she engaged in a protected activity; (2) an adverse employment action was taken against her; and (3) a causal connection exists between the two. *Barker v. Missouri Dep't of Corr.*, 513 F.3d 831, 835 (8th Cir. 2008).

With respect to the first element, "[a] plaintiff engages in protected conduct when he or she opposes an unlawful employment practice." *Gustafson v. Genesco, Inc.*, 320 F. Supp. 3d 1032, 1051 (S.D. Iowa 2018) (citing 42 U.S.C. § 2000e–3(a)). "A plaintiff need not establish the conduct which she opposed was in fact discriminatory but rather must demonstrate a good faith, reasonable belief that the underlying challenged conduct violated the law." *Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 714 (8th Cir. 2000). "Conduct is not actionable under Title VII if no reasonable person could have believed the incident violated Title VII's standard." *Barker*, 513 F.3d at 835.

The second element can be satisfied with a showing that "a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Lopez v. Whirlpool Corp.*, 989 F.3d 656, 664–65 (8th Cir. 2021) (quoting *AuBuchon v. Geithner*, 743 F.3d 638, 642 (8th Cir. 2014)).

Third, any adverse employment action must have been motivated by the employer's "desire to retaliate" against Plaintiff for reporting discriminatory and harassing behavior. *Bharadwaj v. Mid Dakota Clinic*, 954 F.3d 1130, 1136 (8th Cir. 2020) (quoting *Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 737–38 (8th Cir. 2013)); *see also Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 739 (8th Cir. 2017) ("The plaintiff's ultimate burden in a Title VII retaliation case is to prove an impermissible retaliatory motive was the 'but-for cause' of the adverse employment action."); *Blomker v. Jewell*, 831 F.3d 1051, 1059 (8th Cir. 2016) ("Retaliation must be the but-for cause of the adverse employment action." (cleaned up)).

Plaintiff alleges she complained to Allen and Human Resources Representative "Yasmine" that Williams sexually harassed her on March 22, 2018. In her charge of discrimination, Plaintiff alleges Allen took no action on Plaintiff's report, but Plaintiff alleges elsewhere in her Amended Complaint that Allen "would say black lesbians not suppose to hold a 2ⁿᵈ shift lead position." (Filing 11 at CM/ECF pp. 8, 10.) Plaintiff alleges that Human Resources conducted an investigation, but Yasmine "asked [Plaintiff] to let things die down, otherwise Mr. Williams would be let go, and she alleged he was essential to the [Defendants]." (*Id*. at CM/ECF p. 10.) After Plaintiff reported the harassment to Human Resources, she alleges "the harassment continued, in that Mr. Williams told everyone I was a snitch on other matters as well, and other employees started calling me '1-800 HR snitch.'" (*Id*. at CM/ECF p. 11.) Plaintiff also alleges she was subjected to different terms and conditions of employment because her supervisor "did not back [her] up when [she] attempted to enforce [Defendants']

policies" and Williams continued to label her a snitch to other employees. (*Id*.) Plaintiff was then suspended by Yasmine on June 14, 2018, for allegedly harassing and threatening an employee. Plaintiff "was told that someone reported that [Plaintiff] had stated when [she] became a supervisor [she] would write them up and fire them, or have [her] son come down to beat them up," which Plaintiff denies. (*Id*.) Plaintiff was terminated eight days later on June 22, 2018.

Plaintiff sufficiently alleges she engaged in protected activity in March 2018 when she reported to Allen and Yasmine that she was being sexually harassed in the workplace. However, Plaintiff's allegations that she was subjected to different terms and conditions as a result of her report are insufficient to establish an adverse employment action. To constitute an adverse employment action, the "action must be material, not trivial." *AuBuchon*, 743 F.3d at 644 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). The retaliation must produce some "injury or harm." *Lopez*, 989 F.3d at 665 (cleaned up). Plaintiff generally alleges that Williams continued to harass her by labeling her a "snitch" and belittling her in front of other employees and that she did not receive support in enforcing workplace policies from her supervisor, but as discussed above, such conduct does not create a hostile work environment, nor does it appear to involve sexual harassment. Moreover, while such conduct is unprofessional and inappropriate, the Eighth Circuit has held that "ostracism and disrespect by supervisors [does] not rise to the level of an adverse employment action." *Scusa*, 181 F.3d at 969 (citing *Manning v. Metropolitan Life Ins. Co.*, 127 F.3d 686, 692–93 (8th Cir. 1997)).

Plaintiff's termination is an adverse employment action, of course, and the court concludes, for purposes of initial review, that Plaintiff has alleged facts suggesting a plausible connection between her firing and the report of sexual harassment she made three months prior.[3] Plaintiffs may use circumstantial

---

[3] Plaintiff also alleged in her charge of discrimination that she filed a previous charge of discrimination in December 2013, but there are absolutely no facts alleged to suggest any connection between that protected conduct and her termination. (*See* Filing 11 at CM/ECF p. 10.)

evidence to prove causation, but "[t]he more time that elapses between the two events . . . the weaker the inference of causation." *Robinson v. Am. Red Cross*, 753 F.3d 749, 756 (8th Cir. 2014) (citing *Tyler v. Univ. of Ark. Bd. Of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011)). "In such cases a plaintiff must present additional evidence of a causal link, which can include 'escalating adverse and retaliatory action.'" *Id.* (quoting *Tyler*, 628 F.3d at 986–87). *See, e.g.*, *McKey v. U.S. Bank Nat'l Ass'n*, 978 F.3d 594, 601–02 (8th Cir. 2020) (four-month span between plaintiff's report of discrimination and the decision to fire her was too long to support causation for a retaliation claim without additional evidence); *Brunckhorst v. City of Oak Park Heights*, 914 F.3d 1177, 1184 (8th Cir. 2019) ("Without more, the four-month period between [the plaintiff's] first complaint of discrimination and his termination is not sufficient to establish causation through temporal proximity."); *Kipp v. Missouri Highway & Transp. Comm'n.*, 280 F.3d 893, 897 (8th Cir. 2002) ("[T]he interval of two months between the complaint and [the plaintiff's] termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in [the plaintiff's] favor on the matter of causal link.").

Giving the Amended Complaint its most liberal construction, Plaintiff alleges that she reported Williams to Production Manager Allen and Human Resources Representative Yasmine for sexual harassment, that Yasmine asked Plaintiff "to let things die down" because Defendants considered Williams essential and did not want to let him go, that Allen expressed to Plaintiff that black lesbians should not hold Plaintiff's position, that Williams harassed Plaintiff based on her report to Human Resources after she made her report until her termination, and that Plaintiff was then terminated three months after making her report for conduct Plaintiff denies she committed and without the opportunity to speak to Defendants during the investigation. (Filing 11 at CM/ECF pp. 8, 10–11.) While the facts alleged may not suggest the most solid link between Plaintiff's protected conduct and her termination, the court is unwilling at this early stage of the proceedings to find that Plaintiff has failed to state a claim for retaliation upon

13

which relief may not be granted. Accordingly, the court will permit Plaintiff's retaliation claim to proceed to service of process.

## V. CONCLUSION

For purposes of initial review only, Plaintiff's Amended Complaint states claims under Title VII and the NFEPA for race and sex discrimination and retaliation. These claims will be permitted to proceed to service of process, but the court again cautions Plaintiff that this is only a preliminary determination based solely on the allegations in the Amended Complaint. This is not a determination of the merits of Plaintiff's claims or potential defenses thereto. Plaintiff's Amended Complaint fails to state a claim for hostile working environment based on sex and such claim is dismissed without prejudice.

IT IS THEREFORE ORDERED that:

1.     Plaintiff's discrimination and retaliation claims under Title VII and the NFEPA may proceed to service of process against Defendants Bimbo Bakery and Bimbo Bakeries USA, Inc.

2.     Plaintiff's Amended Complaint fails to state a plausible claim for relief for hostile working environment based on sex, and such claim is dismissed without prejudice.

3.     To obtain service of process on the Defendants, Plaintiff must complete and return the summons form that the Clerk of Court will provide. The Clerk of Court shall send two summons forms and two USM-285 forms to Plaintiff, together with a copy of this Memorandum and Order. Plaintiff shall, as soon as possible, complete the forms and send the completed forms back to the Clerk of Court. In the absence of the forms, service of process cannot occur.

14

4.     Upon receipt of the completed forms, the Clerk of Court will sign the summons forms and forward them together with a copy of the Amended Complaint (filing 11), this court's previous Memorandum and Order on initial review (filing 6), and a copy of this Memorandum and Order to the United States Marshals Service for service of process on the Defendants Bimbo Bakery and Bimbo Bakeries USA, Inc.[4] Service may be accomplished by using any of the following methods: residence, certified mail, or designated delivery service upon any officer, director, managing agent, or registered agent, or by leaving the process at Defendant's registered office with a person employed therein, or by certified mail or designated delivery service to Defendant's registered office. *See* Federal Rule of Civil Procedure 4(h); Neb. Rev. Stat. § 25-509.01.

5.     The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

6.     Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process. The Clerk of Court shall set a case-management deadline accordingly.

7.     Plaintiff is hereby notified that failure to obtain service of process on the Defendant within 90 days of the date of this order may result in dismissal of this matter without further notice. A defendant has 21 days after receipt of the summons to answer or otherwise respond to a complaint.

---

[4] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "**[t]he officers of the court shall issue and serve all process, and perform all duties in such cases**." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory); Fed. R. Civ. P. 4(c)(3) (court must order that service be made by United States Marshal if plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915).

8.      Because this non-prisoner case is proceeding to service of process, and at the direction of the court, this case is removed from the pro se docket. The Clerk of Court shall randomly assign new judges to this case and shall request a reassignment order from the Chief Judge.

9.      The parties are bound by the Federal Rules of Civil Procedure and by the Local Rules of this court. Plaintiff shall keep the court informed of her current address at all times while this case is pending. Failure to do so may result in dismissal without further notice.

Dated this 29th day of April, 2022.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge